Hopkins *v.* Mason.

---

## HOPKINS *vs.* MASON.

To establish a right to recover possession of real estate, as against a person claiming under a title shown to be invalid, possession and use by the plaintiff, even without proof of paper title, and ouster by the defendant, are sufficient.

An act authorizing an assessment for a street improvement is in derogation of individual rights, and must be strictly construed, and rigorously observed. If there is a failure to comply with any material requirement of the act, a sale of property for the payment of the assessment, or a lease based upon such sale, will be invalid to confer either title or right to possession.

The proceedings of the commissioners, in making an assessment, until properly adjudicated, are open to investigation in an action in which the title is involved. In such cases, jurisdiction is acquired step by step, and ceases with any failure to comply with the statute.

A party setting up a title to land under a sale for non-payment of an assessment for street improvements, must show the authority to sell; and that includes the taking of those material steps that must precede a valid sale.

Where, by a statute, the trustees of a village were authorized to appoint three freeholders as commissioners to make assessments for certain street improvements, neither of whom should be owners of, or interested in, property within the assessment district; and the trustees appointed, as one of the commissioners, a person who had an actual, pecuniary interest in certain church property situated in the assessment district; *Held* that such commis-

Hopkins *v.* Mason.

sioner was disqualified to act, and the requirement of the statute was not fulfilled.

The statute also required the commissioners to publish a notice addressed to the owners of land within the assessment district, designating a time and place for receiving proof of certain facts. But the notice published was not addressed to anybody. *Held* this was a failure to comply with a jurisdictional requirement.

The same statute also required the commissioners to publish a notice designating a time and place when and where the parties interested could be *heard*, and the report seen and inspected; and to return, with their report, any written objections left with them. By the notice which was given, an opportunity was afforded, not for a hearing, but to present written objections; and there was a failure to specify the time and place where such report could be seen and inspected. *Held* that the notice was defective. That the parties interested were entitled to be heard, without presenting written objections.

A statute declared that all the proceedings of the president and trustees of a specified village "heretofore had in respect to the laying, imposing, confirming, assessing, levying and collecting of taxes and assessments, and in the sale of lands for arrears of taxes and assessments, are hereby ratified and confirmed, and the same are declared to be valid." *Held* that it was matter of serious doubt whether that section, embracing as it did, an independent local subject, to wit, the confirmation and legalization of the acts of local officers, which subject was not expressed in the title of the bill, could be legally interpolated in an act entitled "An act to consolidate, re-enact and amend the charter of the village of Y."

If, by reason of want of jurisdiction, proceedings to levy an assessment are absolutely void, and no title passes by a sale or lease of lands, under such proceedings, the legislature has no power, upon the pretext of confirming the acts of public officers, to take without compensation, a lot from one private citizen and convey it to another.

THIS was an action to recover the possession of real estate. It was tried at the Westchester circuit, before a justice of this court without a jury, and upon his findings and directions a judgment was entered in favor of the plaintiff, and the defendant appealed.

*Francis N. Bangs,* for the appellant.

*Ralph E. Prime,* for the respondent.

*By the Court,* J. F. BARNARD, P. J. It is clear that the plaintiff has established a right to recover possession of the premises described in the complaint, as against any

person claiming under a title shown to be invalid. To establish such a right, it is well settled that possession and use by the plaintiff, even without proof of paper title and ouster by the defendant, may be sufficient, in ejectment. The defendant claims a right to the possession of said premises, by virtue of a lease under a sale by the trustees of the village of Yonkers, for non-payment of an assessment for street improvements. The act authorizing the assessment is in derogation of individual rights, and must be strictly construed, and rigorously observed. If there is a failure to comply with any material requirements of said act, the sale or lease that may be based upon such sale, if the act provide for a sale or lease, will be invalid to confer either title or right to possession. (*Shark* v. *Spier*, 4 *Hill*, 76. *Sharp* v. *Johnson, Id.* 92. *Adriance* v. *McCafferty*, 2 *Rob.* 153.)

The proceedings of the commissioners may show not merely judicial irregularities, but such gross violation of the act itself as would affect the jurisdiction of the subject matter, and therefore such proceedings, until properly adjudicated, are open to investigation in an action in which the title is involved. In such cases, jurisdiction is acquired step by step, and ceases with any failure to comply with the act. (*Adams* v. *Saratoga and Washington R. R. Co.* 10 *N. Y.* 328.)

A party setting up a title to land, under a sale for non-payment of an assessment for street improvements, must show the authority to sell, and that includes a compliance with those material steps that must precede a valid sale. (*Striker* v. *Kelly*, 2 *Denio* 323.) The law, as enunciated in the case of *Swift* v. *City of Poughkeepsie*, is not in conflict with the position here taken. It is proper, however, here to notice, that while the village charter, in the case of the sale of real estate for the non-payment of taxes, makes the lease presumptive evidence that such tax was legally imposed, and the regularity of the proceedings

and sale, it contains no such provisions in reference to sales for non-payment of assessments for street improvements. The proceedings which resulted in the assessment for the non-payment whereof the premises in question were leased, or are claimed to have been leased, to the defendant, by the board of trustees of the village of Yonkers, were instituted under chapter 269 of the laws of 1863. That act contains, among other things, the following provisions: By section 1, the board of trustees of the village of Yonkers are authorized to cause a just assessment or apportionment of the sum of $11,655.61, to be made upon the parcels of land lying within a certain assessment district to be designated for that purpose, said sum being the amount of expenses heretofore incurred by said village, in certain street improvements. By section 2, the said trustees are authorized to appoint three persons as commissioners, to make said assessments, all of whom shall be owners of a freehold estate in the town of Yonkers, liable to taxation, and none of whom shall be owners of, or interested in, property within the limits of said assessment district, &c. By section 3, each commissioner so appointed shall immediately, upon receiving notice of his appointment, take and subscribe in writing, the oath or affirmation required by the constitution, before some officer authorized to administer the same; such oaths or affirmations shall be filed in the office of the clerk of said village, before any commissioner so appointed shall perform any duty as such. By section 4, after making their said assessments, and before making any report thereof, the said commissioners are required to publish a certain notice, addressed to the owners of land within the said district; and in such notice to designate a time and place at which they will receive proof of certain former payments. By section 5, the commissioners, before signing their report, are required to give notice in one or more newspapers published in said village, of the time and place,

Hopkins *v.* Mason.

when and where, the parties interested can be heard, and when and where the .report can be seen and inspected during the interval between the first publication and the day fixed for the hearing; and to return to the trustees, with their report, any written objection that may have been left with them by any parties interested. By section 8, various provisions of the village charter " shall apply to the proceeding authorized to be taken by this act, so far as the same shall be applicable, in the same manner, and to the same extent, as if the same were a part of this act."

Each of the aforesaid requirements is jurisdictional, and a non-compliance therewith would render the proceedings void. These requirements were not fulfilled. 1st. Because Jonathan Odell, one of the commissioners, had, perhaps, not an assignable, but nevertheless an actual, pecuniary interest in the Baptist church property, situated in said assessment district, and was thereby disqualified. 2d. Because the written oath of the commissioners being produced, it does not appear to have been taken before an officer having authority to administer the same. (6 *How.* 394. 18 *Barb.* 407.) 3d. Because the notice required by section 4 was not properly given, and the published notice, purporting to be the one required, was not addressed to anybody. 4th. Because no proper notice, as required by section 5, was published.

By the notice purporting to have been given under section 5, the opportunity is afforded, not for a hearing, but to present written objections. Parties interested should have an opportunity to be heard without presenting written objections. Likewise, there is a failure to give notice of the time and place where such report could have been seen and inspected. The commissioners, therefore, having no jurisdiction to make the assessment, it is unnecessary to inquire whether section 8 gives authority to sell in case of non-payment; or further to trace the steps of the village officers in effecting the assumed transfer of title.

But it is claimed by the defendant, that his title to the said premises is valid, even if there be radical defects in the proceedings of the commissioners and trustees; and he relies upon section 13, of title 2, of chapter 673 of the laws of 1868, page 1503, as a ratification and confirmation, alike, of the sale and of the preliminary steps. Section 13 of the last mentioned act is as follows : " Section 13. All the proceedings of the president and trustees of said village heretofore had in respect to the laying, imposing, confirming, levying and collecting of taxes and assessments, and in the sale of lands for arrears of taxes and assessments, are hereby ratified and confirmed, and the same are declared to be valid." It is a matter of serious doubt whether this section, embracing, as it does, an independent local subject, to wit, the confirmation and legalization of the acts of local officers, which subject is not expressed in the title of the bill, can be legally interpolated in an act entitled, "An act to consolidate, re-enact and amend the charter of the village of Yonkers." (*The People* v. *Hills*, 35 *N. Y.* 449.) To take a broader ground; if, by reason of want of jurisdiction, the proceedings of the president and trustees were absolutely void, and no title passed by their sale or lease of the premises, it cannot be possible that, under our State constitution, the legislature have authority to convey the plaintiff's land to the defendant; to take, without compensation, a lot from one private citizen, and convey it to another; and it is unnecessary, even after giving the broadest scope to all the claims that have heretofore been yielded to the legislature, of the right to confirm the acts of public officers, to cite authorities upon so plain a proposition.

The judgment appealed from should be affirmed, with costs.

[SECOND DEPARTMENT, GENERAL TERM, at Brooklyn, September 12, 1871. *J. F. Barnard*, P. J., and *Gilbert*, Justice.]